The next case today is Nelson Jose Perez-Sosa v. Merrick B. Garland, Appeal No. 20-2083. Attorney Birkin, please introduce yourself for the record and proceed with your argument. Good morning. For the record, my name is Judith Birkin. I'm here in representation of Maricarmena Moldova, who is the attorney for Nelson Perez-Sosa on an issue of Attorney's Fees. He's also accompanying me, they're both off-camera, is Attorney Mary Jo Mendez, my partner and co-counsel on most matters. If I may, since the individual, there's a bunch of issues in this case, but since the individual issues have been fairly adequately briefed in the briefs, I'd like to talk a little about some of the more broader issues, and then I'd certainly attend to any questions that there may be with respect to particular deductions. But in the broad sense, we're talking about reductions of some 53% from the request for attorney's fees. And the essence of this case is what is a reasonable fee in the particular context of this case, and what is the scope of discretion that the judge has, which I know is very broad, but particularly on issues like the rate issue, where it's a visiting judge who was not given information by the defense that in any way questioned the rate requested by Ms. Moldova, but decided to reduce that rate considerably. This goes into the goals of fee shifting, which is to, among other things, to vindicate civil rights, obviously, and also to assure that there will be competent counsel to prosecute plaintiffs. Can I just, maybe for my benefit, it would be helpful if we went through this a little bit more specifically. Sure. So, on the rate issue in particular to start with, which I guess is the foundational point. Yeah. As I read the district court opinion, it cites two cases about the rate. That's correct. It says support the conclusion that $275 is the correct rate. You're absolutely correct, Judge Barron. He cites two cases. There was no affidavit evidence. These are clearly outliers. One of them, I was the attorney involved, and there's a very small civil rights bar here in Puerto Rico for reasons that may be obvious or may not, but I was one of the attorneys involved, and I was asked by Judge Besosa to take a cut in my rate of down to $250, and he made, in that context, in another part of the decision, this was an assigned case but as a favor to the court, essentially, he made, in another part of that same decision, he makes an offhand reference without proof being submitted to the court that $250 is a reasonable rate for an experienced attorney. We don't know if it's an experienced attorney with 10 years, 15 years, 20, 30, 40, like over 40 for me, and for Ms. Almagrover, we're talking about 33 years approximately. So what Ms. Almagrover did in her fee petition was that she not only submitted an affidavit by a similarly situated attorney, and his whole supporting papers, it was in an arbitration case but it's the same analysis, but she also submitted references to other cases where the rate of $275 is cleanly under the market rate, and those cases are cited, I could get the page of the briefing, and I forgot to ask for my two minutes of rebuttal. I assume there's no problem? You can have it, keep going. So when, those two cases that are cited, one is Sky Tech, it's a magistrate's decision, it comes in at lower rates, it gives a parking wall from here to $150, I believe that was. It's one unreported case, but Ms. Almagrover cited a number of other cases, including me and my partner and other people, and you get a sense of the rates, and her requested rate is within that range. $275, I don't know where he got that from, the district judge. He is not, unfortunately he's not from this jurisdiction, he doesn't have a... You know, you keep saying that, Ms. Burkhand, but the Supreme Court told us in Russell against Salve Regina, that we can't give special credence to a district judge who is from the jurisdiction about local law, so I don't see why we should hold it against Judge Smith, who had this case from day one, it's not like he's a visitor who came in just for the fee motion. He had this case from day one, so I think we have to look at his decision the same way we look at any other decision of any other district judge. Is that right? Sir, that's correct in terms of that analysis, however, he has to be put in a position to know what the rate structure here is in the community. I can't recall exactly which case, but I know that in some of the older cases it talks about that the, I think it's your words, because you use the word coin, you know, this particular vantage point that the district judge has, and that applies obviously to the whole nature of the litigation, but it also applies to the relevant market. And when you don't, the U.S. Attorney's Office did not in any way, in any way, put the judge in a position to know what the rate here is. Counsel, counsel, counsel, I'd like, you're up against this abuse of discretion standard, you recognize that, so I get the sense that on a couple of the issues you're trying to argue that the district court made, actually made an error of law. I'd like to ask you about two of those issues. One has to do with refusing to permit approved payments for engagement in settlement discussions, and the other one is working on other cases. The district court seemed to suggest that as a matter of law, and I want you to comment whether that is your argument, that as a matter of law, you can't be compensated for participation in settlement discussions, and you cannot be compensated if you're working on other cases. Is it your position that the district court, as a matter of law, got both of those wrong? Yes, on those two particular issues, yes. The settlement issue is the district court's reasoning was that if you give attorneys fees for plaintiff's counsel for settlement efforts, you'd be discouraging defendant's counsel from engaging in those efforts, and I believe that's an error of law because there is no logic to it. I mean, there's two cases that he cites that vaguely say that, but they're, again, two district court cases. It's a case of first impression here in the circuit. But one of those cases, I think, is the case of Judge Young. Isn't that correct? Yes, I'm sure. Okay. Does he cite any law for that proposition in his decision? He cites two cases. I don't recall the other case. No, Judge Young in his decision. No, no, no. I did that research. I don't have it at hand. I could probably do it by the time of rebuttal, but there were no other citing decisions. There were, there's, as far as I recall, Judge Young doesn't cite any other decision, but essentially, I'd like to argue why it's a mistake of law. Excuse me, Ms. Burkhead. I'd like to hear your argument on that, but I think we should start from the premise because I read Judge Smith's decision, as Judge Lopez apparently did, that Judge Smith applied a per se rule to settlement discussions. So, with that understanding, I'd like to hear what your argument is against it. Well, I mean, whether it were a per se rule, and I agree with you, he does create a per se rule, though he violates it himself. I want to get to that point. There's an ironic position here within the very, Judge Smith's decision that a per se rule is clearly, there's no justification for it, nor would there be a justification to applying it under the particular circumstances of this case. But I do believe, Judge Sellier, that you're correct, that it was a per se rule. Now, he himself, when he was addressing the issue of whether or not there should be a compensation for the time spent in preparing the fee petition, Judge Smith himself says that one of the reasons he's reducing Ms. Almudovar's rate of compensation, or ours, was because she failed to engage in adequate settlement purposes. So, within this very decision, we're going to be required to engage in settlement around the attorney's fees, for example, or not, we will be sanctioned by elimination of half our hours, which is what the judge did. Or, on the other hand, when we try to engage in settlement, we can't get compensated for this, and I don't know where, what other issues, the second one was working on other cases, which I can get to, Judge Lippess, in a moment. But I do want to bring in, and I know it's a tough issue, but I want to bring in 402, which is the reality under which practitioners in this jurisdiction work. The only fee we can get, we cannot get a contingency, we cannot get a retainer, we cannot get a hybrid arrangement. The only fee we can get is for our actual hours of work, and that's 100% clear under the law in Puerto Rico. I didn't submit many cases. There's one that's called, recently called, Burkham-Mendez, in which I was the plaintiff, and my partner, because it creates a situation where these cuts are particularly damaging. Do you want me to go on? Let me just ask you about the 402 issue, Ms. Burkham. The memorandum that was submitted on behalf of your client to the district court, in connection with the fee application, does not appear to me to raise the 402 issue, which you now argue on appeal. The only reference I could find to 402 was in a parenthetical insert in one of the attached affidavits that you were submitting in an effort, that your client was submitting in an effort to show market rate, but I didn't find any developed argumentation in that memorandum that mentioned 402 at all. You're absolutely correct. Why isn't that a waiver? There was a mention in the affidavit by one of the few other practitioners here, which is Enrique Mendoza, which talks about it and says, we're not allowed to charge our clients. We're not allowed to- It doesn't talk about it. It's a one-line parenthetical. That we could be brought up on ethical charges and sued by our clients if we charge them. That's why we don't. That's not the only reason we don't. But the other thing is that in the way this issue was raised, and I agree, I would have liked more development. I was not the attorney on the case below. But regardless, it's in the Mendoza affidavit, and then in the government's response, the You have not submitted any evidence of the rates you charge your clients. So when she came back, she was also lesser developed than on the appeal. I agree with it. But the only reason for her to address that argument at that point was in reply to the argument from the government. But I do believe that independently of how well it was developed below, I think it's something that this court should be aware of, because it's a reality of practice. And we're basically losing all our civil rights practitioners. I don't want to be overly dramatic. But this is because we can't get reasonable fees, and we can't charge our clients, and these cases take up so much time, particularly against the U.S. Attorney's Office. And I would refer to- Before you, and you have two minutes for rebuttal, but I just want to explore briefly the deductions for the meeting with client. Understanding the case law, there's definitely case law that says it's too unspecific to say something like meeting or reviewing documents. I take it you're suggesting that meeting with client gets over that hump. Well, yeah. And I guess I just, I don't know how to think about that in the sense that I didn't see any case law that directly addressed that particular type of designation of what the time was spent on. Yeah, well, I believe that there's two points there. One was meeting with client as supposedly being overworking the case, and I can address that. But I believe you're going to the question of something that we struggle with every day, which is how much information do we put about what we did when we met with the client? Go over documents. Would that be considered good enough? Or go over a specific document. When do we get into the areas of privilege and work product? So, I don't think there's any case law on that. I think this case presents that issue. But there's also the issue that we got the sense that the judge just thought that Ms. Anne McGovern met too long with her client. And I believe that in the particular context of this case, that's really not the case. But the two issues are interrelated, because one reason, if Judge Smith indeed thought that, one reason he might have thought that was because these entries were so nonspecific. Well, the work product objection, all right, seems to me to ring kind of hollow, because we're talking now about after the case is over. If this were a disclosure made while the litigation was still going on, work product is zealously protected. But here, we're just asking the attorney, tell us what you were meeting with your client about. Give us some indication. And these entries give us none, gave Judge Smith none. Well, I think the meeting with client as a generic kind of entry certainly is something that there is no case law, as far as we know. Now, let me just tell you what I saw Judge Toro, is that how you pronounce it? T-A-U-R-O? Judge Toro, yes. And Massachusetts did in a similar case, which was real estate. I don't know if it's cited in the brief, but if not, I can do a rule 28. But it's real estate, bar association versus real estate. Counsel, can I just say on this issue? Okay. I'm sorry. Go ahead. I interrupt you. Go ahead. Saying what Judge Toro did is I was struggling with these issues in the context of the appeal and for this preparation. Judge Toro, what he did was he told the attorney, I find these are too vague. Would you do specific privilege affirmations as to the entries? And in part, that's, you know, like we have to go to an issue here, which may be uncomfortable, and it may be considered inappropriate for me to do so, but I'm going to try. Which is that there were some management issues in this case. There was a lot of lengthy times of period where motions were pending or where things would be raised. There would be a status conference. And then typically, one or two exceptions, there was a ruling where it was very difficult to know what the precise ruling was. And I believe that if the judge had said precisely to me, it would be good if you would just indicate the privilege that you're asserting, whether it's work product or whether it was this, and it might have been work product analysis of documents, but that might be considered to be too vague also. My practice is I don't write down what I'm talking with my client. I could usually reconstruct it as to what was going on. But in this case, Mr., the client, Nelson Perez-Sosa, was in a sense like a co-counsel. It's a very complicated case. He's a very skilled attorney. Okay, we're a little bit, I take the point, because you wanted to follow. Yeah, if I could, please, just very quickly. First of all, I understand you haven't gotten to the question I raised about other cases. And again, in writing about that, the district court used, I think, used the word distinct cases. I mean, it makes sense to say you should not get compensation or work done on unrelated cases. But I think your argument is that these were not unrelated. These were not distinct cases. I mean, these were cases your client testified in these cases. They grew out of sort of the same factual problems in the U.S. Attorney's Office. You had the same superiors making decisions about what was going to happen to other attorneys. He was asked to testify. So I guess it's your argument. These were all interrelated. They were not distinct. Do I understand your argument correctly? Certainly, sir. These are all interrelated cases being litigated at the same time with the exact same managers. I can list them. The exact same managers testifying in those cases and in the case I'm litigating right now and where Ms. Maduro was representing Nelson Perez. They're all interrelated. It's not work on other cases. Again, I don't recall the exact sites, but I can look at them, and I'm sure I addressed them in my brief. But I believe he cites two or three cases, and they're all cases that decide that you work on another case, and then a couple years later or whenever it is, you have this case. And the work that you did on the other case was helpful to this case. So that really goes to the low start issue of what your rate is, not to get in credit for the work in the other case. Here, it was not that way. These cases are being litigated. They're sharing of information. There's the exact same witnesses. Nelson Perez testified in Carmen Marquez's case. Carmen Marquez and Nelson Perez testified in Francisco's case. They're totally related. This was work on this case. This was not work on another case. What kind of error would this be by the district court? Is this an error of law? Is it an exercise of discretion that puts too much emphasis on one factor? What's the nature of this? I'm going through the list of abuse of discretion. It could be characterized as an error of law if we adopt a rule—if you adopt a rule, not we. If the rule to be adopted is that when you work on unrelated cases or prior cases, it doesn't count for this case, which are the only decisions that are out there. So that could be characterized as an error of law. Or if you go through the factors on abuse of discretion, there's a factor that says giving too much emphasis to one factor or ignoring other factors. And I think it could be viewed either way. Can I just ask one last question and then we'll hear from your opponent? But if I understood your briefing, you wanted us to set the—I don't see how that quite fits with what you were just saying about how the district court should have given you the opportunity to be more specific about some of the entries. Well, that's in terms of the meeting with client issue. That's one remedy that could be sent back to the district court. Okay. All right. They're just in the alternative, then. That's fine. Thank you. Okay. Am I out of time? I think you are out of time. I have a lot to say. Yes, yes, Judge. We ran over. Yeah, yeah, yeah. Okay. Let's hear from your opponent. Thank you, Judge. At this time, would Attorney Birkin please mute her audio and her video? And Attorney Fulch, please unmute your audio and video and introduce yourself to begin oral argument. Good morning. Many pleas the court. Monica Fulch for the government. District court did not abuse its discretion in reducing attorney's fees in this case from almost $400,000 to $170,000. This was a straightforward Title VII case involving one plaintiff alleging retaliation by his employer. Ms. Fulch, can I ask you to start with the two per se rules that the district court apparently employed? The first and most concerning to me is the one excluding any time spent in settlement discussions. Yes. With regard to settlement, the district court's decision, I think, is susceptible to either he's making a decision on the law or he's applying what he sees as the law to the facts in this case. Assume that I read that as a categorical exclusion of time spent in settlement discussions. How can that be justified? Doesn't that create absolutely perverse incentives? Well, it could create incentives, bad incentives, obviously, in certain cases where courts want to encourage settlement and... Are there any civil cases where courts don't want to encourage settlement? Well, the issue is, right, in that, I think, Judge Salia, you're referencing a case where you want to encourage plaintiffs to enter into settlement negotiations and want to know that they're going to get paid for them. I'm referencing any case where any civil case I've ever seen, all right, courts are generally disposed to the view that if the parties can reach an amicable settlement of something, that will be better in the long run than having an outsider in the person of a judge decide it. And a rule that discourages the parties from talking about settlement, it seems to me, has things absolutely backward. Yes, and Judge Smith actually was expressing the same concern with disincentivizing defendants from entering into settlement negotiations if they believe that they are going to have to pay for the litigation as well as the settlement. But that's only a disincentive if you assume that defense counsel are dense enough to let those settlements go on pointlessly for long periods of time. The typical defense counsel is aware that her client will be well served by a settlement that will save money in the long run than by prolonging the litigation. So I don't see how it creates a perverse incentive on that end. I can see how under any scenario, defense counsel knowing plaintiff's counsel may apply for compensation if plaintiff's counsel prevails, would want to not engage in fruitless or senseless settlement negotiations after any realistic possibility of settlement has been exhausted. But to say that you can't get compensated for time spent in settlement at all? I read Judge Smith's concern and the concern that was expressed by Judge Young in the case he cited as being one where the defendant doesn't actually have control over how much time the plaintiff spends on so-called settlement negotiations. There's no finding here that the particular entries for the settlement were in specific unjustified because of some rationale like that. There's just a general finding that all the settlement expenses are covered. Isn't that right? That's right. Judge Smith did not make a specific finding in his ruling on this. And the court always has control over that because as Judge Smith indicated in his decision with respect to motion practice, the court simply can refuse, even if settlement discussions are compensable, can refuse to compensate attorneys for wasted time or empty gestures. The court has that kind of control. Yes. Just to say you're going to compensate for settlement discussions doesn't give a blank check to plaintiff's counsel. Yes. And in this case, that's why I'm saying that Judge Smith's reading or that his decision on this issue is also susceptible to the reading that in this case, the hours spent on settlement were not compensable. Judge Smith was very... I don't recall anything in his decision that could be read that way. It seemed to me pretty clear that he was, by his citation of Judge Young's opinion, et cetera, that he was setting up a categorical rule. Did he specifically discuss certain times spent in settlement negotiations and say, this illustrates that they were knowingly wasting their time? He did not. And I don't want to suggest that. I will say there were 13.7 hours claimed total on settlement because in this case, settlement discussions were not productive and almost from the outset, there were letters publicly docketed that the judge would have seen that made clear that the plaintiff was skeptical that any settlement was possible in this case, and therefore, they were almost immediately unproductive. And so the judge, having been very involved in this case, very involved in management of the docket of this case, would have known that and would have had that particular perspective when making his determination as to the settlement. Counsel, what about the distinct cases issue that I raised with the opposing counsel? I was troubled by the suggestion that somehow these cases were same unrelated. It seemed to me to make a lot of sense that if the plaintiff here was a crucial witness in those other cases, which involved many of the same issues, some of the same people that are involved in this case, to treat that as non-compensable, again, on the theory that they are distinct cases, they don't seem to be distinct at all. So how do you justify that characterization by the district court? Well, there are certainly many overlapping issues and people in both cases. But the cases are fundamentally different. And nothing in the case that Mr. Parasosa brought against the government required his specifications as a witness in either of those two cases. And nothing in either of those two cases was going to be controlling in the case that Mr. Parasosa brought against the government in this case. And therefore, in that sense, while there may be some decisions in the other two cases that could be persuasive to the suspect in this case, there's nothing controlling and nothing in our case, again, required him to be a witness in those other cases. And I also say that while there were some overlapping issues, not all of the cases were overlapping. But why isn't the test whether a reasonable lawyer would feel it's necessary in the representation of his client or her client in the civil rights case to attend a deposition of a key witness in a related case or to help to prepare her client for deposition testimony in that case or some such? Why shouldn't it be on an entry by entry basis depending on the circumstances and what a reasonable lawyer in the ordinary course of events would or would not be expected to do? That's certainly a viable option, and it was a viable option, I think. But why is it not? Why is it an option? Why isn't it the law? Why? I mean, if the idea of the Fees Act is to provide a reasonable fee to plaintiff's lawyers for work, which we have characterized compensable work as meaning reasonably productive work, why shouldn't work on related cases be looked at in the same way? Would this be reasonably productive for a reasonable attorney who's agreed to represent a client, let's say, for example, Perez Sosa in a civil rights case, in a particular civil rights case? I again will say that I think it is an option, but it could not be the rule because Judge Smith didn't have control over anything or everything. No, but I think the question is, did he make an assessment under the standard Judge Selya just articulated? He did not. He did not appear to make that assessment. Okay. I will say that I think it is subject to an abuse of discretion standard, but because it does depend on the determinations that Judge Smith was making with respect to the fact that this case and, I suppose, the overlap in those other cases, but... Can you address the meeting with client entry point, which I guess, again, I can't tell there whether the right way to think about that is whether that's a per se rule ruling or whether that's an individualized determination, and I guess what concerns me about it is just that it seems to me that there's a difference between a state entry like working on case or meeting, and then this is more specific than that. It's reviewing documents, reviewing transcripts. Meeting with client. I mean, when you meet with the client, you could be talking about a lot of different things, and as your opposing counsel points out, in a case like this, this is no ordinary client given his legal position, so the statement that meeting with client is productive work doesn't leap off the page to me that one would be skeptical about it, and so I just am trying to... I get the sense that that entry is just being said per se is too nonspecific, and it doesn't strike me that that makes enormous amount of sense, but I don't know if there's case law that addresses that point. All I've seen is case law that addresses the point that a bare entry, you know, time spent on case or meeting doesn't count, and I can see exactly why, but this isn't that, and this strikes me. Reviewing transcripts counts, but meeting with client doesn't. I don't really understand the difference. So, a couple points in response to that. One is that the judge for vague entries, the judge just deducted 30%, so he didn't disallow all of those entries altogether, and he did apply that 30% deduction across all vague of evidence, meeting with client, telephone conference with client, draft memorandum. All such entries that didn't give the judge a sense of how that time was actually spent beyond the fact that there was a meeting with the client, all of those entries were just by 30% they weren't completely disallowed. But I guess that's what I'm saying. So, if I just have a bunch of entries saying reviewing the record, that's automatically take 30% off that? I just don't understand what he's doing, the way he's proceeded here. He decided that there's so many entries like that, that it's just not plausible that that was all productive, and therefore taking 30% off, and is there a finding to that effect? Because some of the reasoning sounds to me like he's saying the unspecific nature of the reference, in and of itself, tells me it wasn't productive, and I don't really follow why that would make sense. No. So Judge Smith said his determination was that those entries on their own did not allow him to make a judgment as to whether that time was productively spent or not, and for that reason, and following precedent, he deducted some time. There is precedent that judges are entitled to deduct all of the time, but he did not do that here. He deducted 30% of that time. Yeah, but that's what I'm saying, that that depends on the threshold of determination that's not specific enough. And I guess what I'm having trouble with is, what is our test for how specific an entry has to be? If I put down reviewing transcripts, is that not specific enough? I have to name the transcript? Reviewing, uh, I think Judge Smith made the determination in this case. No, I know what he, I know what he, I'm trying to, what is the legal test for specificity? That there has to be, one, you could make things incredibly specific. You could describe everything you talked about with your client. You could also be completely vague and say, I had a meeting, and not say who with. Then you say, I had a meeting with the client, or I had a meeting with ex-witness. Is, I had a meeting with ex-witness, is that too unspecific? Because I didn't say what I met with the witness about. I just don't quite follow how to put this. But anyway, it seems to me somewhat important because it was, if at least if I'm reading the district court's decision right, it had a pretty big impact on, on the trial. It did have a big impact, and in part that's because there were 251 entries totaling 276 hours that, that did not give the judge or the government an understanding of what was happening during that time and whether it was conduct of defense. And I'm just going to add one, one point to this, is that the, the government pointed out the decisions that were proposed before opposing the fee petition, and its opposition to the fee petition, as to all of the, to the extent that there was, that it was too vague or whatever. And, you know, while the plaintiff's counsel did come back and say, for example, I should be able, I should be entitled to have vague and I don't need to say any more. At no point did plaintiff's counsel do any kind of line by line, I offer to give additional information. And it is the plaintiff's burden here to provide that kind of information and to make whatever suggestion as to making the record more complete. Counsel, let me just say, I think this is a extremely consequential issue because it seems to me you're suggesting, if we simply affirm what the district court did here, that there's really a special rule for these civil rights cases in terms of how specific, how elaborate you have to make these kinds of entries. I mean, I can't help but think back to my own years in private practice. These, these entries, meeting with client, reviewing documents, those are exactly the kind of entries that I recall we would all make. You don't, you don't go into great detail about why you were meeting with the client, what you discussed. You don't go into great detail about what documents you were reviewing. What the attorney did here strikes me as entirely additional and ordinary. And yet we are saying, but for these civil rights cases, that's not good enough. You need to be much more fulsome. It'd be one thing if the reasoning was, look, there's 120 hours spent on meeting with the client. Given this type of case, that's not plausible. I'm going to take 30% off. Or he said, you know, this wasn't the case that was that document intensive. And yet there's 200 hours of document review. That's not plausible. I take 30% off. But the way I read the opinion is he's taking 30% off without making that judgment just because meeting with clients too unspecific. And that, that doesn't strike me as right. Unless there's a finding that that much meeting with the client isn't appropriate for a case like this and warrants a 30% cut. I don't really see the basis for the cut. Um, I think a couple of responses to that, and I think the main one is that this is not a novel issue that only affects, uh, well, from here on out will affect, um, civil rights lawyers negatively. There have been cases, including in this circuit that have held, or that have rather, you know, confirmed interest towards judgment, that entries like this that confer with clients review materials and pre-documented legal research lack the sufficient indication of what, what was being done during that time period to allow the judge to make a decision. Well, that's, if there's authority saying that that, that, that, we're obviously bound by it. That's, I guess, what I was asking. Is there authority saying meeting with client itself is too unspecific to be? There is authority affirming a district court determination on an abuses of discretion standards that time entries like that are not, are, are too late. I thought those entries were things just like meeting, not confer with client. Is that wrong? I, I believe that that is right. There is authority, um, that, uh, confer with client review documents. Okay. Thank you. Any further questions from the panel? No, no, thank you. No, all set. Thank you. Thank you, Attorney Fulch. At this time, you can mute your audio and video. Attorney Birkin, um, please reintroduce yourself on the record, uh, begin your two-minute rebuttal. For the record, I'm Attorney Judith Birkin representing the appellate. Um, first of all, I have to say, we tried to send a message to Dan, but we couldn't hear everything that Ms. Fulch was saying, but I think I got the gist of it, but there was a technical issue. I think it was probably in her office just with, uh, interference or whatever. Uh, I believe that Ms., uh, Almodovar, for the most part, did very specific entries. I think I was impressed by her ability to, to say which documents she was reviewing, which is not the practice in this jurisdiction, nor is the practice, of course, for there to be a core, non-core, we haven't talked about that issue, but that is, uh, to me, very problematic because that's not how it works in this jurisdiction, and sometimes relegating to, uh, paralegal staff actually increases work rather than, uh, eliminates work. You're arguing for a Puerto Rico-specific rule because our case law is pretty clear that a district judge not only has the discretion to allocate different rates for core and non-core work but strongly encouraging district courts to do exactly that. So you're saying there should be some special rule for Puerto Rico? No, no, no, I think that it depends on how a nativity is compensated in the relevant market, but I don't, I, I mean— But, but, but the question becomes, Ms. Burkin, compensated for what? And, and what our case law says is that there is certain, there are certain types of work which should not be compensated at the same rates as work that requires optimal legal skill and expertise. That's the basis for the distinction. Yes, and— Which could apply universally, including in Puerto Rico cases. Yeah, I know Lipset, which you and I were both on 45 years ago, but they— The difference is you were getting paid for it. At the end, I did get paid. But, and I believe, obviously, the case that's always cited is Brewster, but Brewster says essentially that that's allowable. I think it's, you know, it's hard. We are set to very tough standards. I mean, I, I've been improving my, my contemporaneous records as the judges of the district court require things. If, if my partner and I are both working on the summary judgment the same day, he considered the majority of the judges here say it's duplicative, even though we're clearly dividing the work, and the same thing with evidentiary issues, etc. So, the question is, what, I mean, I'm concerned, I'm at the end of my career, I'm quite concerned about whether there will be attorneys to be able to do this when they are compensated so out of line with what the jurisdiction is. I have no knowledge of any law firm in Puerto Rico that distinguishes among these kinds of things. But the other thing I do want to mention, Judge Selya, and your point is obviously well taken, but the other thing I want to mention, now, I forgot what I wanted to mention. Market rates. I forgot what I was going to mention. There was a very important point there somewhere in the back of my mind. It's very important for us to be sure, we'll come back, that we are not put to the burden of having to do an incredible amount of documentation in a case. This case was, you know, I have to also say Ms. Alma Dover had extraordinary success in this case. She took three depositions, that's all. One of them was... Ms. Birkin, thank you, appreciate the argument. That's the end of my argument, is that what you said? I'm also deaf as I get older. Yeah, that is what I'm saying. And I hope you reach a just result. Thank you. That concludes arguments for today. This session of the Honorable United States Court of Appeals is now recessed until the next session of the court. God save the United States of America and this honorable court. Counsel, you should disconnect from the meeting at this time.